UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TROLL COMPANY A/S,

        Plaintiff,

    v.

UNEEDA DOLL COMPANY, LTD.
and ROBERT SIMMONS,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X



<u>OPINION & ORDER</u>
05 Civ. 8612 (RO)

<u>Appearances</u>:

Craig S. Mende, Michael Chiappetta
Fross Zelnick Lehrman & Zissu, PC
Attorneys for Plaintiff.

Barry G. Magidoff, Gregory A. Brehm
Greenberg Traurig, LLP
Attorneys for Defendant.

<u>OWEN, District Judge</u>:

      The famous whimsical, fuzzy-haired Troll doll was created in the late 1950s by Danish

woodcarver Thomas Dam. In or about 1958-59, Dam commenced manufacturing and marketing

the Good Luck Troll in Denmark and elsewhere. In 1962, he founded the Danish company

"Dam Things Establishment," through which he continued to market his troll dolls. In or about

mid-1963-1964, the company licensed defendant's predecessor, Uneeda Doll Company, <u>Inc.</u>

[thus distinguished from today's Uneeda Doll Co., <u>Ltd.</u>; *see caption*], to produce and distribute a

specific line of these very dolls, under the name "Wish-niks," for which Dam had secured a U.S.

design patent. Plaintiff obtained a United States copyright for the troll dolls in 1965.[1] However,

the said copyright was invalidated in subsequent litigation that same year, due to sale of the dolls

---

[1] The application specified the copyright owner as "Dam Things Establishment" and the date and place of first
publication as "November 1, 1961," in the "Kingdom of Denmark." <u>See</u> U.S. Copyright No. GP45998.

without copyright notice, which put the dolls in the public domain.[2] Notwithstanding this, after

Dam's death in 1989, his children and sole heirs granted plaintiff Troll Co. the exclusive right to

exploit and license the Troll doll. On January 1, 1996, the theretofore-lost Troll U.S. copyright

was automatically restored by virtue of the Uruguay Round Agreements Act.[3] Thereafter,

plaintiff also reapplied for registration of the restored copyright, and was granted U.S.

Registration No. VA 1-002-073 as of March 21, 2000. After Uneeda, in the early 2000s, was

expressly appraised of plaintiff Troll Co.'s restored rights, and it assured plaintiff that all

production and distribution of the Wish-niks had ceased, plaintiff learned in August 2005 that

defendant Uneeda was manufacturing and selling newly-produced copies of the Troll doll –

again dubbed "Wish-niks," but now bearing copyright notices in Uneeda's own name – to Wal-

Mart stores, the nation's largest retailer.[4] Uneeda's product is, at this point, withdrawn.

This action arises on the eve of plaintiff Troll Company's long-planned launch of a major

rebranding and marketing campaign for the Troll doll. Consequently, plaintiff asserts claims for

copyright infringement under both the United States and Chinese Copyright Acts and for

unauthorized importation, and seeks injunctive and monetary relief.

In order to obtain a preliminary injunction, plaintiff Troll Co. must demonstrate "(a)

irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious

questions going to the merits to make them a fair ground for litigation and a balance of hardships

tipping decidedly toward the party requesting the preliminary relief." Hasbro, Inc. v. Lanard

Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) (citations omitted).

---

[2] Scandia House Enterprises, Inc. v. Dam Things Est., 243 F.Supp. 450, 454 (D.D.C. 1965).
[3] Codified in Section 104A of the U.S. Copyright Act of 1976, 17 U.S.C. § 104A(a)(1).
[4] On this record, Uneeda does not claim, until very recently, any production in the several years following the invalidation of the original copyright after 1995; nor does Uneeda make the claim that any production sold in the post-1996 period was manufactured in the pre-1996 period, which is the only period in which reliance rights could arise and attach. See discussion *infra*.

When a copyright is infringed, irreparable harm normally is presumed, "because the confusion created in the marketplace will damage the copyright holder in incalculable and incurable ways." Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 124 (2d Cir. 1994) (citations omitted). The case before me presents direct evidence of actual copying, as defendant Uneeda's predecessor was a former licensee of plaintiff Troll Co.'s predecessor, as to this very product. See Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir. 1992); Ringgold v. Black Entertainment Television, Inc., 126 F.3d 70, 74-75 (2d Cir. 1997). Furthermore, the Troll and Wish-nik dolls are substantially similar, as any lay observer could discern simply by comparing them side-by-side. See Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d at 123. These cheerful dolls do not share features common to the brooding, grotesque, nefarious trolls of Northern European folklore, but rather, contain virtually identical interpretive expressions of those features – namely, Defendant's Wish-nik doll expresses Dam's unique idea of "troll" in a manner almost indistinguishable from the expression in plaintiff's Good Luck Troll doll.

Defendant Uneeda argues that it is exempted from suit at this time because it qualifies for "reliance party" status under Section 104A of the Copyright Act. A reliance party, for applicability here, is one who, with respect to a particular work whose copyright has been lost, makes "copies" of that work while it is in the public domain, and thereafter, notwithstanding that the original copyright ownership has been restored, is given one year free of an infringement claim to sell off any existing inventory of these copies.[5] 17 U.S.C. § 104A(d), (h)(4). However, this is not extended to such as Uneeda, which had ceased manufacturing, distributing and/or selling its dolls prior to restoration, and now, nearly a decade later, has sought to reenter the

---

[5] Even during this transitional grace period, the reliance party is, of course, prohibited from manufacturing new copies.

market by manufacturing a new round of the now-infringing product. See 104 CONG. REC. E2264 (daily ed. Oct. 8, 1994) (statement of Rep. Hughes) (incorporating the continuing infringement doctrine into the requirements of Section 104A, "the defendant must have engaged in an ongoing series of acts. Cessation of that activity for an appreciable period of time will deprive one of reliance party status.") Although both parties acknowledge that these dolls are part of a cyclical market,[6] defendant Uneeda has not come forward with any evidence of production and/or distribution of its Wish-nik dolls beyond the end of 1995, the copyright being restored in 1996.[7] Conversely, as Calle Østergaard, the President and CEO of Troll Co. testified, plaintiff Troll Co. routinely monitors the U.S. marketplace and toy industry and the Internet for marketing activities relating to the Good Luck Troll properties, including the activities of known former manufacturers like defendant Uneeda, but has uncovered no evidence of any troll dolls manufactured by Uneeda around the time of, or in the several years subsequent to, the 1996 restoration. Hr'g Tr. 42-52. Furthermore, defendant represented to Troll Co. in both 2001 and 2004 that it was no longer manufacturing or selling its dolls and that it had no intention of doing so in the future. Hr'g Tr. 48-59.[8] Thus, plaintiff Troll Co. had no reason to believe that defendant possessed any "reliance party" status, and consequently only sent defendant official written notice of its intent to enforce the restored copyright on October 18, 2005, shortly after learning that Uneeda's Wish-nik dolls were being offered for sale at Wal-Mart, and failing to resolve the issue amicably. This is all it needed to do under the statute. 17 U.S.C. § 104A(d).

---

[6] The last resurgence of which occurred in 1992.

[7] Indeed, defendant's counsel brought forth not a single witness to testify before this court at the October 25 hearing, with regard to this or any other matter at issue, nor did they ask for additional time to do so, and simply closed evidence despite my earlier warning that I would only fully credit cross-examinable testimony. See TRO Hr'g Tr. 24-25, Oct. 25, 2005 ("Because [of] the mere fact that there is an affidavit, there is sufficiency to create an issue of fact if it has appropriate content and I will hear it but it does not stand alone to support a conclusion."); id. at 86-87, 90, 122.

[8] Mr. Østergaard testified that after verbally informing Wilson Lee (a business development manager for Defendant's Hong Kong affiliate) of Plaintiff's restored copyright, Lee assured him that nothing was being done with the Trolls, and that all he wanted was legitimate business with the Plaintiffs.

Defendant Uneeda's recent sudden manufacture and distribution of new "Wish-nik" versions of plaintiff's copyrighted troll doll, sporting defendant's own copyright, occurs at a critical juncture, as plaintiff is launching its re-branded "Classic Troll" line of Good Luck Troll dolls in advance of the 2005 holiday season. This conduct, and any further distribution or sale of defendant's dolls at this time, would seriously and perhaps irreparably damage plaintiff Troll Co.'s retailer relations, undermine its carefully-orchestrated marketing campaign, and deprive the company of its ability to control the image and reputation associated with its troll doll. Accordingly, pursuant to Rule 65 of the Federal Rules of Civil Procedure and Section 501 of the U.S. Copyright Act of 1976, 17 U.S.C. § 501, defendant Uneeda is hereby enjoined from manufacturing, distributing or selling its "Wish-nik" dolls, or any other dolls which would be an infringement of the Troll copyright, pending the resolution of the trial hereafter.

So Ordered.

Dated: New York, New York
          November 23, 2005

_____
UNITED STATES DISTRICT JUDGE